JDN

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Michael Kight, | No. CV 07-0418-PHX-DGC (LOA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Todd Guilford, et al., | |
| Defendants. | |

Plaintiff Steven Michael Kight brought this civil rights action under 42 U.S.C. § 1983 against City of Phoenix Police Officers Todd Guilford and Wayne Williams (Doc. #5).[1] Defendants filed a Motion for Summary Judgment (Doc. #30), which has been fully briefed by the parties (Doc. ##35, 37). The Court will deny Defendants' motion but allow Defendants 30 days to file a new motion addressing whether Plaintiff's excessive force claim is cognizable.

**I.     Background Facts**

Plaintiff's claim arose during his arrest on February 11, 2006, in Phoenix, Arizona (Doc. #31, Defs.' Statement of Facts (DSOF) ¶ 2). Plaintiff was standing at the back of a truck, which was parked the wrong way on the street (id. ¶ 6; Doc. #36, Pl.'s Statement of Facts (PSOF) ¶ 6). Defendants approached Plaintiff, and Williams asked him who owned

---

[1] Upon screening, the Court dismissed the City of Phoenix Police Department, Sgt. McClimans, Matthew Richardson, Steven Bonaguidi, Sarah Stone, Unknown Prosecutor, Maricopa County, Judge Roland J. Steinle, and the State of Arizona as Defendants (Doc. #6).

the truck (DSOF ¶ 8; PSOF ¶ 8). Plaintiff indicated that the truck was his (DSOF ¶ 9; PSOF ¶ 9). Williams informed Plaintiff that the license plate was expired, and he asked Plaintiff if he had a driver's license (DSOF ¶¶ 11-12; PSOF ¶¶ 11-12). Plaintiff did not have his license, but he gave Williams his driver's license number (DSOF ¶ 13; PSOF ¶ 13). Williams next asked if Plaintiff had identification; Plaintiff indicated that he did not (DSOF ¶ 14; PSOF ¶ 14). Upon Defendants' request, Plaintiff provided his name, date of birth, and social security number (PSOF ¶ 15). Plaintiff alleged that Guilford accused him of providing false information, called him a liar and a drug addict, and threatened to put him in jail (id.; Doc. #35 at 2). Williams conducted a records check and learned that the truck was registered to someone other than Plaintiff (DSOF ¶ 16; PSOF ¶ 16).

### A.     **Plaintiff's Facts**

According to Plaintiff, he made an effort to further identify himself and told Guilford that he had been convicted in Ohio of manslaughter (PSOF ¶ 18). Plaintiff also informed Williams that he did not use drugs; he had quit one month earlier on his birthday (id. ¶ 20). Plaintiff heard Williams tell Guilford that Plaintiff did not have any warrants (id. ¶ 21). At this time, it appeared to Plaintiff that Defendants were preoccupied with methamphetamines, the residence near where they were standing and its occupants, and other individuals in the neighborhood – none of which concerned Plaintiff (id.). Because he did not have a warrant and Defendants made no mention of a parking violation (for parking in the wrong direction), after 10-15 minutes of conversation, Plaintiff began walking towards the residence and on the way, grabbed his keys that were hanging from the gas cap of the truck (id.). Guilford asked Plaintiff what he grabbed; Plaintiff responded that it was keys, and he dangled them for Guilford to see (id.).

Plaintiff notes that he was residing in the home and, thus, had no reason to run from Defendants (id. ¶ 22). Yet Guilford apparently chased Plaintiff to the backyard of the residence and Williams followed (DSOF ¶¶ 22-23; PSOF ¶¶ 22-23). Guilford then pushed Plaintiff over a fence in the backyard (PSOF ¶ 25). Plaintiff turned around in a "defensive" manner to protect himself from a further assault by Guilford, but Guilford continued to "stalk

and fight" Plaintiff without ever telling Plaintiff to "stop" or that he was under arrest (id.). Guilford punched Plaintiff in the face, which caused a laceration above his eye (id. ¶¶ 33-34). Guilford then yelled to Williams "my gun, he's going for my gun," although Plaintiff was not making any move for his gun; rather, he was in a fetal position (Doc. #5 at 6(A)). Williams ran up to Plaintiff and pushed him back down to the ground and, with his knee, pressed his full body weight against Plaintiff's neck (id.; PSOF ¶ 36). Williams placed Plaintiff's right arm in one link of the handcuffs while Plaintiff's left arm was trapped beneath his body as he lay on the ground (PSOF ¶¶ 37-38). Defendants twisted Plaintiff's arms unnecessarily to place him in cuffs (id. ¶ 38).

Guilford transported Plaintiff to Maryvale Hospital where he was treated for the cut above his eye (DSOF ¶ 42; PSOF ¶ 42). From there, Guilford transported Plaintiff to the Fourth Avenue Jail for booking (DSOF ¶ 43; PSOF ¶ 43).

Plaintiff's remaining facts go to his criminal case and his claims against the prosecutor, his defense attorney, the judge, the county and the state (PSOF ¶¶ 44-100). These Defendants and these claims were dismissed by the Court upon screening (Doc. #6).[2]

### B. Defendants' Facts

Defendants' maintain that while Williams conducted the records check, Plaintiff told Guilford that he had prior arrests for drugs and manslaughter (DSOF ¶¶ 17-18). Guilford then asked Plaintiff for permission to search him, and Plaintiff reached into his pants pocket and removed an unknown object (id. ¶ 20). When Guilford asked Plaintiff what he had in his hand, Plaintiff began running (id. ¶ 21). Guilford chased Plaintiff through the yard and residence to the backyard; they were followed by Williams (id. ¶ 22-23). In the backyard, Plaintiff attempted but failed to jump over a fence (id. ¶ 24). Plaintiff turned to face Guilford and assumed an aggressive stance, and when Guilford reached him, the two fell against the fence and to the ground (id. ¶¶ 25-26). Plaintiff was on top of Guilford and attempted to remove Guilford's gun from his holster (id. ¶¶ 27-28). At this point, Guilford and Williams both feared for their own safety and the safety of each other and the general public (id. ¶¶ 29-

---

[2] The Court dismissed Counts I, II, III, V, VI, VII, VIII, IX, and X (Doc. #6 at 11).

1  31). Guilford's attempts to subdue Plaintiff were unsuccessful so he struck Plaintiff 3-4
2  times in the head with his fist, which caused a cut above Plaintiff's eye (id. ¶¶ 32-33).

3      Williams, who had heard Guilford yell for help when Plaintiff got on top of him, ran
4  towards Guilford and pushed Plaintiff off of him (id. ¶ 36). Defendants then attempted to
5  handcuff Plaintiff, but he refused to release his arms despite orders to do so (id. ¶¶ 37-38).
6  Finally, Defendants were able to cuff Plaintiff (id. ¶ 39).

7      Because Plaintiff had attempted to get Guilford's gun and because Plaintiff was
8  bleeding, Defendants called for a sergeant to respond to the scene (id. ¶ 40). The sergeant
9  arrived and interviewed Defendants and Plaintiff before he was transported to the hospital
10 (id. ¶ 41). Plaintiff denies that the sergeant ever spoke to him (PSOF ¶ 41).

11 **II.   Motion for Summary Judgment**

12     In their motion, Defendants contended that their actions did not violate a constitutional
13 right and, assuming otherwise, such a right was not clearly established, so Defendants are
14 entitled to qualified immunity  (Doc. #30). In support, Defendants submitted their own
15 affidavits (Doc. #31, Exs. A-B) and copies of police reports (id., Ex. C).

16     The Court issued an Order informing Plaintiff of his obligation to respond to the
17 summary judgment motion (Doc. #32).[3]  In his response, Plaintiff asserted that many of
18 Defendants' facts are false, as well as statements in the police reports (Doc. #35 at 1-2). He
19 argued that Defendants' story – that Plaintiff fled from them with a baggie of drugs – was
20 fabricated solely to justify their misconduct and use of excessive force (id. at 2).

21     Defendants replied that Plaintiff's response and his statement of facts do not comply
22 with the Federal or Local Rules of Civil Procedure because his disputed facts make only
23 general, unsupported denials (Doc. #37 at 3-4). They also noted that Plaintiff entered a plea
24 of guilty to aggravated assault against Guilford; thus, given the facts, Defendants are entitled
25 to qualified immunity (id. at 2, 4).

26 / / /
27 / / /
28

[3] Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998).

- 4 -

**III.    Legal Standard**

    **A.    Summary Judgment**

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.

In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). The affidavits presented by the parties must "set forth such facts as would be admissible in evidence." Fed. R. Civ. P. 56(e).

    **B.    Excessive Force**

A claim that law enforcement officers have used excessive force in the course of an arrest is analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989). To determine reasonableness, a court must balance the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the

1  government interests at stake. Id. at 396. In addition, the reasonableness of the use of force
2  "must be judged from the perspective of a reasonable officer at the scene, rather than with
3  the 20/20 vision of hindsight." Id. When determining whether the totality of the
4  circumstances justifies the degree of force, the court must consider "the facts and
5  circumstances of each particular case, including the severity of the crime at issue, whether
6  the suspect poses an immediate threat to the safety of the officers or others, and whether he
7  is actively resisting arrest or attempting to evade arrest by flight." Id. The inquiry is
8  "whether the officers' actions are 'objectively reasonable' in light of the facts and
9  circumstances confronting them, without regard to their underlying intent or motivation."
10 Id. at 397 (citations omitted).

11 **IV.    Analysis**

12     **A.    Heck v. Humphrey**

13 To recover damages for harm caused by actions whose unlawfulness would render a
14 conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence
15 has been reversed on direct appeal, expunged by executive order, declared invalid by a state
16 tribunal, or called into question by a federal court's issuance of a writ of habeas corpus.
17 Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). "A claim for damages bearing that
18 relationship to a conviction or sentence that has not been so invalidated is not cognizable
19 under § 1983." Id. at 487. In other words, if the plaintiff's conviction or sentence arises out
20 of the same facts that underlie the alleged unlawful behavior for which damages are sought,
21 the § 1983 suit must be dismissed. Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996).

22 Defendants note in their reply memorandum that Plaintiff is incarcerated as a result
23 of his June 8, 2007 guilty plea to aggravated assault against Guilford (Doc. #37). While this
24 fact raises a question whether Plaintiff's claim may be barred under Heck, Defendants do not
25 make that argument. Even assuming they were presenting a defense under Heck, the Court
26 could not consider it. First, this assertion is not supported by any documentary evidence, i.e.
27 a copy of the plea agreement or an affidavit. Second, this fact was raised in the reply
28 memorandum and Plaintiff had no opportunity to dispute it or submit an argument in

1  opposition.  See Cedano-Viera v. Ashcroft, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003)
2  (declining to consider an issue raised for the first time in a reply brief); see also Greene v.
3  Solano County Jail, 513 F.3d 982, 990 (9th Cir. 2008) (*sua sponte* grants of summary
4  judgment are not appropriate absent reasonable notice of the issues, particularly with a *pro*
5  *se* litigant who "cannot be expected to anticipate and prospectively oppose arguments that
6  an opposing defendant does not make" in a summary judgment motion) (citations omitted).
7  The Court will therefore proceed with the excessive force analysis under Graham.

8    **B.**  **Evidence**

9    In support of their motion, Defendants proffer the copies of three police reports
10 concerning the incident at issue (Doc. #31, Ex. C (two reports dated Feb. 12, 2006 and one
11 dated Fed. 27, 2006)).  A district court may only consider admissible evidence in ruling on
12 a motion for summary judgment.  See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285
13 F.3d 764, 773 (9th Cir. 2002).  Unauthenticated documents and hearsay evidence are not
14 admissible, and, consequently, may not be considered on summary judgment.  See Orr, 285
15 F.3d at 773-74, 778.  The police reports submitted by Defendants are not admissible
16 evidence.  There is no accompanying verification by the custodian of records, and the reports
17 contain hearsay evidence.  Defendants have not identified any applicable exception to the
18 hearsay rule.  As such, they will not be considered by the Court.

19   With respect to Defendants' claim that Plaintiff's response and separate statement of
20 facts do not comply with the rules of procedure, the Court does not agree (see Doc. #37 at
21 3).  Plaintiff's statement of facts (1) sets out numbered paragraphs that correspond to
22 Defendants' numbered paragraphs, (2) indicates whether he disputes each of Defendants'
23 facts, (3) provides a reference to the portion of the record that he believes supports his
24 contentions, and (4) sets out additional facts in separately numbered paragraphs that also
25 contain citations to the record  (Doc. #36).  See LRCiv 56.1(b).  Although Plaintiff did not
26 attach his own affidavit, his First Amended Complaint is properly verified and sets forth
27 specific facts based on personal knowledge and admissible as evidence (Doc. #5).  See
28 Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).  The First Amended Complaint

1 is treated as an opposing affidavit under Fed. R. Civ. P. 56. See id.

### C. Excessive Force

#### 1. *Nature of the Force Applied*

The first step is to "assess the quantum of force used to arrest [Plaintiff] by considering 'the type and amount of force inflicted.'" Deorle v. Rutherford, 272 F.3d 1272, 1279 (9th Cir. 2001) (internal citation omitted). Construing the facts in Plaintiff's favor, which the Court must do for the purposes of summary judgment, Guilford punched Plaintiff in the face 3-4 times without provocation. Plaintiff also alleged that while he was on the ground in a fetal position, Williams pressed his body weight with his knee to Plaintiff's neck and twisted Plaintiff's arms unnecessarily (Doc. #5 at 6(A)). Although this force does not rise to deadly force or ensure serious injury, it is more than insignificant.

#### 2. *Need for Force*

"[I]t is the need for force which is at the heart of the Graham factors." Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997). As stated, the "need for force" analysis looks at the severity of the crime at issue, whether the suspect poses an immediate threat, and whether he is resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396.

On Plaintiff's facts, the only underlying crime at issue was a parking violation. Plaintiff had no outstanding warrants, and he disputes that he had any drugs on his person or that he attempted to dispose of any contraband. It also appears that Defendants were not called to the scene for any reason connected to Plaintiff (see DSOF ¶¶ 5-6). There is no evidence that Plaintiff initially presented any sort of threat to Defendants' or anyone else's safety. As the incident moved to the backyard, the parties dispute what happened. Plaintiff asserts that Guilford walked up to him and punched him in the face and that Plaintiff then maintained a fetal position and did not go for Guilford's gun (Doc. #5 at 6-6(A)). Further, Plaintiff implies that since he was never on top of Guilford, there was no need for Williams to apply force (id. at 6; PSOF ¶ 27). The only support for the use of some force may be Plaintiff's apparent attempt to evade arrest by flight, but Plaintiff alleges that Defendants

- 8 -

fabricated the claim that he fled (Doc. #5 at 5; PSOF ¶ 22). These Graham factors would have permitted no use of force, or, at the least, very minimal use of force by Defendants.

### *3. Balancing the Force Used Against the Need for Force*

It is the balancing of the application of force against the need for that force that ultimately determines whether the force employed was reasonable. Drummond v. City of Anaheim, 343 F.3d 1052, 1058 (9th Cir. 2003). This determination is judged from the perspective of a reasonable officer on the scene. Graham, 490 U.S. at 396-97. "[P]olice officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. Even where some force is justified, the amount actually used can still be excessive. Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002).

On this record, the amount of force used against Plaintiff does not appear justified. If Plaintiff, as he alleges, was simply standing there when Guilford punched him, and if Plaintiff made no attempts to grab his gun and was in the fetal position, there was no need for force by either Defendant. Summary judgment is only appropriate if, after resolving all factual disputes in Plaintiff's favor, the Court concludes that the officer's use of force was objectively reasonable. See Scott v. Henrich, 39 F.3d 912, 914 (9th Cir. 1994). In this case, such a conclusion cannot be reached. The parties dispute the material facts and the Court may not make credibility determinations or weigh the conflicting evidence. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Indeed, the Fourth Amendment reasonableness test is inherently fact-specific and is therefore ordinarily a question for a jury. See Liston, 120 F.3d at 976 n. 10; Chew v. Gates, 27 F.3d 1432, 1443 (9th Cir. 1994). Defendants' request for summary judgment on the excessive force claim will be denied.

### D.     **Qualified Immunity**

Defendants assert that they are entitled to qualified immunity. If a defendant claims qualified immunity, the court must make two distinct inquires: the "constitutional inquiry" and the "qualified immunity inquiry." See Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002). The "constitutional inquiry" asks whether, when taken in the light

1 most favorable to the non-moving party, the facts alleged show that the official's conduct
2 violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If so, a court turns
3 to the "qualified immunity inquiry" and asks if the right was clearly established at the
4 relevant time. Id. at 201-02. This second inquiry "must be undertaken in light of the specific
5 context of the case, not as a broad general proposition." Id. at 201.

6 As discussed above, the facts viewed in the light most favorable to Plaintiff create a
7 triable issue regarding whether Defendants used excessive force against Plaintiff. The
8 second step of the Saucier analysis requires Defendants to demonstrate that the use of
9 unreasonable force in the execution of the arrest did not violate clearly established
10 constitutional law.

11 Defendants argue that the constitutional violation alleged by Plaintiff was not clearly
12 established at the time of the underlying incident (Doc. #30 at 8). A right is clearly
13 established if its contours are "sufficiently clear that a reasonable official would understand
14 that what he is doing violates that right." Kennedy v. City of Ridgefield, 439 F.3d 1055,
15 1065 (9th Cir. 2006) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). It is not necessary
16 that there be a prior case with the identical facts showing that a right is clearly established,
17 it is enough that there is preexisting law that provides a defendant "fair warning" that his
18 conduct was unlawful. Kennedy, 439 F.3d at 1065; see also Deorle, 272 F.3d at 1285-86
19 ("[a]lthough there is no prior case prohibiting the use of this specific type of force in
20 precisely the circumstances here involved, that is insufficient to entitle [defendant] to
21 qualified immunity").

22 Individuals have a right to be free from the use of excessive force during an arrest.
23 See Mendoza v. Block, 27 F.3d 1357, 1361-62 (9th Cir. 1994). During the course of arrest,
24 if an arrestee is rendered helpless, any reasonable officer would know that the continued use
25 of force constitutes excessive force. See LaLonde v. County of Riverside, 204 F.3d 947, 961
26 (9th Cir. 2000). The Ninth Circuit has specifically held that kneeling on a compliant
27 arrestee's back or neck after he has complained of choking violates clearing established law.
28 Drummond, 343 F.3d at 1062.

In light of the established state of the law at the time in question, Defendants had "fair warning" that their alleged treatment of Plaintiff was unconstitutional. Because there are triable issues of fact as to whether the force used against Plaintiff was unreasonable, and because Defendants had notice that their alleged conduct was unconstitutional, Defendants are not entitled to qualified immunity at this stage of the litigation.

## V.     Conclusion

In sum, Defendants have failed to present evidence demonstrating the absence of a genuine issue of material fact that they used excessive force against Plaintiff. But, as stated, Defendants did not present an argument regarding whether Plaintiff's action is cognizable in light of Heck. The Court will allow Defendants 30 days to file a motion solely on this issue. Should they file a new motion, Plaintiff will be notified of his rights and obligations in responding to the motion. If no motion is filed within 30 days, this matter will be set for trial.

**IT IS ORDERED:**

(1) Defendants' Motion for Summary Judgment (Doc. #30) is **denied**.

(2) Within 30 days from the date of this Order, Defendants may file a motion addressing whether Plaintiff's excessive force claim is cognizable.

DATED this 9th day of May, 2008.

_David G. Campbell_
United States District Judge